OPINION OF THE COURT
Albert M. Rosenblatt, J.
At issue is the constitutionality of certain provisions of the juvenile offender law of 1978. (See, generally, L 1978, ch 481.)
The legislation, among other things, lowers the age of criminal responsibility for certain violent crimes, by creating a class of "juvenile offender” (Penal Law, § 10.00, subd 18; L 1978, ch 481, § 27, eff Sept. 1, 1978), whose cases are to be treated in accordance with a host of procedural statutes, including provisions contemplating retention of cases within the criminal court system, or their removal to Family Court.
The defendant at bar is a 14-year-old who was charged upon a felony complaint in the Town of Pawling, Dutchess County, with entering the home of an 82-year-old woman, and with robbing and raping her. He now stands indicted for two counts of first degree burglary (class B felonies), first degree rape (a class B felony), and second degree robbery (a class C felony). These offenses all now fall within the purview of subdivision 18 of section 10.00 of the Penal Law and section 30.00 of the Penal Law (L 1978, ch 481, § 28) which, by abolishing the infancy defense for 14- and 15-year olds charged with these felonies, authorize their criminal prosecution.
Subject to certain exceptions not here present, the local criminal court, upon the defendant’s arraignment, was authorized to enter an order, pursuant to CPL 180.75 (subd 4, par [a]), removing the action to Family Court, for further proceedings under new CPL article 725 (L 1978, ch 481, § 44).
The pertinent removal section reads as follows: "4. Notwithstanding the provisions of subdivisions two and three of this *26 section, (a) the court, on motion of any party or on its own motion may, and shall, at the request of the district attorney, order removal of an action, except one involving a complaint charging a juvenile offender with murder in the second degree, or an armed felony as defined in subdivision forty-one of section 1.20 of this chapter, to the family court pursuant to the provisions of article seven hundred twenty-five of this chapter, if it is determined that to do so would be in the interests of justice”.
The Town Court (Ronald Wozniak, J.) denied the defendant’s application for removal.
The defendant is now challenging the constitutionality of CPL 180.75 and the proceedings conducted thereunder, as a denial of due process and equal protection.
The relevant constitutional issues involve the defendant’s attack upon the subject removal statute itself, claiming that CPL 180.75 (subd 4, par [a]) suffers from "a lack of provisions for a hearing and of standards to guide the Court’s determination” for removal or retention. The statute authorizes removal of the action to the Family Court "if it is determined that to do so would be in the interests of justice.” (Emphasis supplied.)
Moreover, the arraigning court is empowered to conduct "such inquiry as it deems necessary” (CPL 180.75, subd 5; L 1978, ch 481, § 33).
The defendant was represented by counsel, who was present at the arraignment and hearing in the Pawling Town Court on September 12, 1978. At the inception of those proceedings, the new law was specifically invoked. Assistant District Attorney Paul Sullivan stated: "What we are dealing with is an offense that occurred after September 1, 1978; therefore we find that the new statute that was passed by the Senate and Assembly, and went into effect September 1st, should be controlling. That statute made certain changes in the Criminal Procedure Law, the Penal Law, the Executive Law, and the Family Court Act, especially with respect to the treatment of individuals that have been handled as juveniles in the Family Court prior to September 1st, 1978. It appears now that a hearing must be held by the local criminal court, and that is our purpose in the hearing today, and inquiry must be made by the court as to whether or not this case should stay within the adult court and the individual be treated as an adult, and that this case be referred to the adult section of the *27 criminal court. The charges that have been brought in this court are felonies that would fall under the section. The question also before the court is that no changes have been made by this statute as to the defendant’s right to a preliminary hearing. Not only must the court make an inquiry as to whether or not this defendant’s action is to stay in the adult court, but he also has the right to the preliminary hearing. It is both the inquiry and the preliminary hearing that are before the court.”
The defendant’s attorney then asked that the proceedings be closed "pursuant to Section 720.15 of the Criminal Procedure Law.” He also argued that "[i]t is not until after the testimony at this hearing that a determination is made whether or not to submit the case to the Family Court or to elevate the case to a superior court.”
Judge Wozniak said that he was concerned with "whether or not the defendant should be treated as an adult or as a youth,” and decided to conduct the proceedings in private, apparently to preserve such confidentiality as would occur in the Family Court were he to decide to order removal.
The defendant was then arraigned and a hearing was held, at which the People presented sworn proof, by calling the victim, who detailed the crimes, and identified the defendant. The defendant’s attorney was then given the right to cross-examine the victim, which he did. Redirect and re-cross-examination ensued, and the court then asked the defendant if he wished to testify. He declined, following which the prosecutor asked the court to deny removal to Family Court and to find reasonable cause to hold the defendant for the Grand Jury.
The defendant’s attorney specifically urged removal, "in the interests of justice” under CPL 180.75 (subd 4, par [a]), citing the defendant’s age and lack of prior record.
Judge Wozniak found proof enough to hold the defendant for the Grand Jury and specifically found that the case was of a type fit for criminal prosecution rather than Family Court adjudication. He referred to the violent nature of the crime, the proof, and the 82-year-old rape victim. At no time did the defendant’s attorney challenge the procedure or the court’s ruling by which removal was rejected. This is significant not because there is a claim of waiver advanced or adopted, but because the record utterly refutes any claim that a removal hearing or inquiry was not held.
The court will therefore, nonetheless, consider the con *28 tention, raised after indictment, that the removal provisions of CPL 180.75 (subd 4, par [a]) are unconstitutional as written, or as applied by the arraigning court.
In statutory and constitutional terms, the question is whether a determination to retain or remove "in the interests of justice” is constitutionally sufficient to afford the defendant due process, and whether the proceedings comported with the statute.
Clearly, the nature of the inquiry was identified. It was adversarial, counseled, and included confrontation. The defendant was afforded, but rejected the right to testify and submit proof. At the conclusion an express statutory adjudication was made in the presence of all parties and attorneys. The defendant offered no witnesses although invited to do so. Under these circumstances, his claim that no hearing was held is incomprehensible and must be repudiated.
Be that as it may, the critical point is whether the statute, because it posits removal "in the interests of justice” with no further standards, can abide due process and equal protection criteria.
Upon oral argument, the court expressly asked defense counsel whether he is asserting that the State lacks power to lower the age of criminal responsibility to age 14 for the offenses charged. That argument was disclaimed by the defense, and it was averred that the challenge rests on procedural due process grounds; that CPL 180.75 (subd 4, par [a]) is standardless and that the proceedings in the local criminal court were violative of those constitutional rights.[1]
In Kent v United States (383 US 541, 551, 553), the Supreme Court, on due process and Sixth Amendment grounds, vacated an order by which the District of Columbia Juvenile Court waived jurisdiction over a 16-year-old defendant, and dispatched the case to the United States District Court for trial, in violation of the defendant’s right to counsel, absent any inquiry, while citing no reasons for the removal. The Supreme Court stated that the proceedings took place in an atmosphere affording the defendant "less protection than is accorded to adults suspected of criminal offense,” in a cause determined "in isolation and without the participation or any *29 representation of the child,” and in "total disregard of a motion for hearing filed by counsel,” resulting in the defendant’s transfer to a jail along with adults, all in violation of a removal statute which requires a "full investigation” (D. C. Code, § 11-914 [1961] now § 11-1553 [1965]).
In every material respect, New York’s statute, and the proceedings held thereunder in the case at bar, differ substantially from Kent.
1. The defendant here was represented by a Public Defender from the outset. There was no Sixth Amendment deprivation by way of right to counsel, or to confrontation. The defendant was accorded the right to cross-examine, to testify, and to call witnesses.
2. Unlike in Kent, the court expressly conducted a removal inquiry under CPL 180.75 (subd 4) and so denominated it, even though it also served as a basis to establish reasonable cause to hold the defendant for Grand Jury action, under CPL 180.75 (subd 3, par [a]).
3. Nothing was done "in isolation” except to the extent that the court honored the defendant’s attorney’s request to conduct the proceedings in private. The defendant’s attorney did not seek to expand the inquiry, nor, as in Kent was there any foreclosure of proffered proof, or the denial of or request for access to any records.
4. The accused, under the assailed statute is given every right which adults receive, relative to arraignment, counsel, bail, preliminary proceedings, and release upon failure of timely disposition, all of which apply without distinction as to age (CPL 180.60, 180.80).
5. Whereas in Kent the defendant, upon transfer, was jailed with adults, New York’s statute provides, under newly enacted CPL 510.15, that the juvenile, at all stages of the proceeding, be lodged with the State Division for Youth in a facility for the reception of children. An order to that effect was made by Judge Wozniak.
6. The test for removal or retention is in the "interests of justice” at the arraignment stage. There is no requirement for a "full investigation,” nor, for the reasons to follow, does this court find the "interests of justice” standard to be constitutionally deficient.
7. There are additional stages at which removal is authorized. The Grand Jury may initiate removal proceedings (CPL *30 190.71, subd [b]). After indictment, removal may be brought about upon recommendation of the District Attorney in a class of cases including the one at bar. (CPL 220.10, subd 5, par [h], cl [iii]; see, also, Bellacosa, Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, 1978-1979 Pocket Part, pp 175-176). Removal is also authorized following a verdict where the defendant is not criminally responsible (CPL 310.85; L 1978, ch 481, § 67), and, after verdict, in the interests of justice (CPL 330.25; L 1978, ch 481, § 42). These options are designed to ameliorate any harshness which might otherwise result had the statute provided for unalterable decisions regarding the choice of forum.
It may be not enough to say that the due process accoutrements here exceed those in Kent. The Kent case is, to be sure, readily distinguishable, but is pressed on the court as containing standards for minimal due process against which New York’s law must be measured. The Kent court is not clear on whether its holding rests predominantly on a due process abridgment of the District of Columbia removal statute or on a constitutional mandate by which no State may legislatively classify or automatically provide for removal, transfer, or mandatory waiver without an informed judicial decision.[2]
It is, however, enough to say that at bar there was an informed judicial removal decision marked by due process, right to counsel and confrontation, in an atmosphere of fair treatment. Kent requires no more. Even if this court were to read Kent (in contrast to the interpretation given by the courts set forth in the above footnote) as holding that New York may not effect such a juvenile classification or transfer *31 without informed judicial decision making, the provision for an inquiry to be determined by "the interests of justice” meets the test of fairness and due process. The procedural requirements of a criminal trial or administrative hearing are not expected (Kent v United States, 383 US 541, 562) but, insofar as the right to counsel, confrontation, witnesses, cross-examination, subpoena power, self incrimination, speedy arraignment, and impartiality were concerned, the defendant was afforded due process. Nor is an "interests of justice” standard incompatible with due process or tantamount to vagueness.
Legislative enactments permitting courts to make a variety of determinations "in the interests of justice” or "in furtherance of justice,” are not new to our State with the enactment of CPL 180.75. These enactments have been an integral part of the criminal procedural process for many years, and appear throughout the CPL. (See, inter alia, CPL 30.30, subd 4, par [b] [speedy trial time limitations]; 60.42, subd 5 [admissibility of evidence of victims’ sexual conduct in sex offense cases]; 170.25, subd 4, par [b] [release of defendant in custody pending Grand Jury action]; 170.40 [dismissal in furtherance of justice: lower court]; 170.55, subd 2 [adjournment in contemplation of dismissal]; 170.56, subd 2 [adjournment in contemplation of dismissal: marihuana cases]; 180.40 [Superior Court application to return case to lower court following preliminary hearing or waiver of hearing]; 180.50, subd 2, par [b] [reduction by lower court on felony charge]; 180.70, subd 3 [reduction of felony complaint after hearing by lower court]; 180.80, subd 3 [release by lower court of defendant from custody upon failure of timely disposition]; 200.20, subd 3 [order granting separate trials of two or more offenses]; 210.20, subd 1, par [i] [motion to dismiss indictment in the interests of justice]; 210.20, subd 3 [discretion to entertain subsequent motions by Superior Court]; 210.40, subd 2 [motion to dismiss indictment in furtherance of justice]; 210.46 [adjournment in contemplation of dismissal in Superior Court marihuana cases]; 250.10 [late filing of notice of defense of mental disease or defect]; 255.20, subd 3 [late filing of pretrial motions]; 260.30, subd 7 [admissibility of rebuttal evidence]; 390.50, subd 2 [disclosure of presentence reports]; 440.10, subd 3, par [c] [motion to vacate judgment]; 440.20, subd 3 [defendant’s motion to set aside sentence]; 440.40, subd 3 [People’s motion to set aside sentence]; 470.15, subd 3, par [c] [determination of appeals in the interest of justice]; 470.15, subd 6 [determination of appeals in *32 the interest of justice]; 470.20, subd 1 [determination of appeals by intermediate appellate courts in the interests of justice]; 470.20, subd 6 [determination of appeals by intermediate appellate courts in the interests of justice; modification of sentence]; 470.25, subd 2, par [a] [determination of appeals by intermediate appellate courts in the interests of justice]; 470.30, subd 1 [prohibition against reversals in the interests of justice by the Court of Appeals]; 470.50, subd 1 [reargument or reconsideration of appeals in the interests of justice]; 570.54, subd 1 [extradition: application for issuance of requisition]; 580.30, subd 2 [securing attendance of defendants confined in Federal prisons]; 610.25, subd 2 [securing attendance of witness by subpoena; apportionment of cases or reproduction and transportation of physical evidence in the interests of justice]; 630;20, subd 4 [securing attendance of witnesses confined in institutions within New York State]; 680.20, subd 1 [examination of witnesses on commission outside this State]; 680.20, subd 2, par [e] [examination of witnesses on commission outside this State]; 700.50, subd 3 [eavesdropping warrants; examination of intercepted communications in the interests of justice]; 715.30, subd 1 [orders of the court concerning destruction of dangerous drugs]; 720.20, subd 1, par [a] [youthful offender determinations in the interests of justice]; 730.60, subd 5 [dispositions of indictments against defendants in the custody of the Department of Mental Hygiene].)
It is thus abundantly clear that the Legislature has consistently contemplated judicial dispositions of cases at various stages when action is deemed warranted by the "interests of justice”. To strike down CPL 180.75 (subds 4, 5) on the ground that the "interests of justice” standard is uneven or vague, would be to undermine these numerous sections of the CPL, and to shake a most fundamental concept of judicial decision making.
Although this court could not hope to point out every occasion in which the phrase "interests of justice” has been codified, interpreted, or applied, this State’s decisional law is replete with instances where the phrase has been the subject of appellate consideration, either in reviewing statutes containing the words, or in exerting its own inherent judicial power to act under them.
One such statute which seems to have evoked a substantial amount of litigation on the meaning and application of the phrase "interests of justice” is CPL 210.20 (subd 1, par [i]), *33 which authorizes a Superior Court, upon a motion of a defendant, to dismiss an indictment or any count thereof, upon the ground that a dismissal is required in the interests of justice under CPL 210.40. This statute and those of similar import have been frequently interpreted, and their application has been reviewed many times. In each instance, the courts have not cast any doubt upon the constitutionality of this standard, but rather have made careful value judgments in applying the test to individual fact situations. (People v Wingard, 33 NY2d 192 [interpreting the application of CPL 170.40, subd 1]; People v Benevento, 59 AD2d 1029; People v Murry, 57 AD2d 711; People v Scroggins, 56 AD2d 856; People v Isaacson, 56 AD2d 220; People v Shearin, 55 AD2d 939; People v Rao, 53 AD2d 904; People v Singleton, 50 AD2d 938; People v Belkota, 50 AD2d 118; People v Trottie, 47 AD2d 751; People v Kowk Ming Chan, 45 AD2d 613.)
Moreover, the Appellate Division in this department, in People v Clayton (41 AD2d 204), engraved specific standards upon the application of the phrase "interests of justice.” Finally, in People v LeiT (56 AD2d 753), the court, on its own, suggested that the lower court inquire whether a motion to dismiss in the interests of justice should be granted in a case where it was not even raised in the briefs. Such a direction, sua sponte, more than suggests to this court the confidence of this State’s appellate courts in the validity of the phrase, "interests of justice” so as not to raise any serious doubts about its constitutionality.[3]
Adjudications made "in the interests of justice” have not been limited to trivial points of pleading or procedure, but have occasioned the most far-reaching consequences, including, as we have seen, such profound determinations as whether a person remains a defendant or not, and whether his conviction should be reversed (People v Reyes, 63 AD2d 917, 919) or his sentence shortened by the Appellate Division (People v Discala, 45 NY2d 38; People v Pellicci, 63 AD2d 1009).
*34 From the foregoing authorities, the court concludes that the Legislature lawfully sought to deny any right to juvenile treatment to this particular class of defendants. This court holds that no due process deprivation inheres in the legislation. Furthermore, in passing the legislation, the State has not acted arbitrarily or discriminatorily, under equal protection standards. Doubtless, the Legislature considered the level and number of violent crimes committed by individuals of this age. It concluded that the parens patriae role of the Family Court was not meeting public needs in all cases, and that the population supported the enactment of more severe measures for greater protection from young violent offenders. The Legislature represents the will of the People not only in a theoretical sense. In this instance, it cannot be said to be out of harmony with public attitudes toward youthful violent crime, and it ill befits the judiciary to second-guess them. (Woodard v Wainwright, 556 F2d 781, 785.)
The Legislature is, therefore, not capriciously "singling out” a particular group of individuals for distinct treatment, but subsuming within the existing criminal framework, an additional class of persons based in empirical criteria, by the imposition of punishment as a means of deterrence. (Ernest van den Haag, Crime and Punishment: Moral Choices in Contemporary Society, University of California, San Diego National Endowment for the Humanities, 1977.)
The Court of Appeals, 21 years ago, quoted Governor Dewey as applauding the repeal of the laws by which juveniles could be criminally convicted of murder (People v Oliver, 1 NY2d 152, 157, supra). Under earlier law (see Penal Law, § 486, subd 3 [L 1948, ch 554]; Penal Law, § 2186 [L 1949, ch 388]) such prosecutions were authorized. The change represented a shift in public attitudes, and was not the result of any declaration of unconstitutionality (see People v Murch, 263 NY 285; People v Roper, 259 NY 170).
It is not for this court to say that Governor Dewey was right or wrong, or that the Legislature is acting improvidently in seemingly reverting to the practices of an earlier day. This is a fundamental point which cannot be overemphasized. John Chipman Grey, in The Nature and Sources of the Law (Macmillan, New York, 1927, p 139), states that "one way of approaching the Law starts from the needs of society, and considers how far the Law is adequate or inadequate to those needs.” Then, quoting Austin, that " 'with the goodness or *35 badness of the laws General Jurisprudence has no immediate concern, which distinguishes it from the Science of Legislation.’ ” The maxim has been the byword of the courts, as reflected in holdings which universally affirm the eschewal of judicial review on matters of legislative wisdom and prerogatives (People v Broadie, 37 NY2d 100; McKinney’s Cons Laws of NY, Book 1, Statutes, § 73).
These considerations suggest to this court not only an occasion for judicial restraint, but the desirability of exposing the new laws and prosecutions thereunder to public scrutiny, in order that the population, and, in turn, the Legislature, may observe and weigh their operation and results.
The Legislature has not required that these proceedings be conducted in closed court and it appears to be a matter of discretion,[4] which should be exercised against closure. This court shares the view that the courts should not conduct their proceedings in private, absent extenuating circumstances involving, for example, physical dangers (People v Hinton, 31 NY2d 71, cert den 410 US 911), and that this is applicable to juvenile proceedings as well.
When the accusations against the defendant are as grave as these, the interests of privacy should give way to the public’s legitimate interest in learning whether the charges are borne out. The avoidance of enduring stigmatization has been offered by commentators as a reason for insulating juveniles from the exposure or disgrace which may accompany public proceedings.[5]
Whether public exposure deters or rewards the young offender has been debated.[6] In either case, those considerations should be subordinated to the community’s need to observe *36 the workings of its justice system with regard to accusations of major proportions.
It would be naive to pretend that the community, particularly the people in Pawling, are unaware of the defendant’s arrest upon a charge so severe. The matter should be public. If the defendant is eventually cleared it is well that the population know of that too. If convicted, the reasons which underlie disclosure and identification are equally compelling.
In view of the foregoing, the motion to dismiss the indictment is denied.

. Many State statutes make provision for such intercourt transfers. The procedures vary widely as to original jurisdiction, "concurrent” jurisdiction between juvenile and adult courts, transfer provisions, waivers, and related points. (See, generally, Peyser, The New Juvenile Offender Law in New York, NYU, Sept. 27, 1978, p 1, col 1.)

. A number of Federal and State courts have upheld the constitutionality of statutes which permit juveniles to be treated as adults without a hearing in certain instances (Woodard v Wainwright, 556 F2d 781, reh den 560 F2d 1023, cert den 434 US 1088; Cox v United States, 473 F2d 334, cert den 414 US 869; Russel v Parratt, 543 F2d 1214; United States v Quinones, 516 F2d 1309, cert den 423 US 852). These cases, and State court decisional counterparts (e.g., People v Sprinkle, 56 111 2d 257; State v Grayer, 191 Neb 523) all of which were decided after Kent, suggest that the Kent holding does not constitutionally mandate that judically conducted removal hearings be held at all, but that classification may turn on the age and the crime, and by vesting discretion, as to the choice of court, in the prosecution. See, also, sections 2186 and 1045 of New York’s former Penal Law by which the automatic classification of those under 16 was authorized for certain crimes. (People v Oliver, 1 NY2d 152; People v De Lage, 65 AD2d 626.)
While these cases may be read as constitutional signposts marking due process parameters the court does not and need not decide the consequences of a statute or proceeding devoid of any hearing or inquiry.

. In People v Beige (41 NY2d 60, 62), the Court of Appeals criticized the Legislature’s use of the phrase, "interests of justice” and invited the attention of the Legislature to enact more specific standards for its application. However, the court did not suggest that the statute therein reviewed was either unconstitutional or invalid. Indeed, the court noted with commendation judicial efforts to apply sufficient safeguards to avoid any misuse or abuse in its application, citing People v Clayton (41 AD2d 204).

. The constitutionality of statutes authorizing closure or prohibiting publication is before the Supreme Court. (Smith v Daily Mail Pub. Co., 443 US —, 24 Or L 4085, cert granted 439 US 963; see, also, Oklahoma Pub. Co. v District Ct., 430 US 308.)

. See, generally, Paulsen and Whitbread, Juvenile Law and Procedure, p 162; Cashman, Confidentiality of Juvenile Court Proceedings: A Review, Juvenile Justice, August 1973, p 33; Note, Rights Rehabilitation in the Juvenile Courts, 67 Col L Rev 281, 286; Task Force Report: Juvenile Delinquency and Youth Crime, President’s Commission on Law Enforcement and Administration of Justice, 1967; The Juvenile Court, 23 Harv L Rev 104; Juvenile Justice Standards Project, Institute of Judicial Administration — ABA Joint Commission Standards Relating to Adjudication, p 73; Open Hearings in Juvenile Courts in Montana, Juvenile Court Judges Journal, vol 16, No. 1, p 16.

. Geis, Publicity and Juvenile Court Proceedings, 30 Rocky Mt L Rev 101; Juvenile Delinquents: The Police, State Courts, and Individualized Justice, 79 Harv L Rev 775, 794.