OPINION OF THE COURT
Rose McBrien, J.
Felony complaints have been filed against the defendants pursuant to the newly enacted juvenile offender legislation which became effective on September 1, 1978. The present case has posited several questions of first impression concerning the procedural standards to be employed by this court in entertaining and deciding a motion to have the case of a juvenile offender removed from the adult criminal justice system to the paternal jurisdiction of the Family Court.
Defendant Roberto Martinez is 14 years old, his codefendant, Midna Rodriquez, is 15 years old. The felony complaints herein are identical in regard to the charges and the allegations of fact. In substance, the complaints allege that on October 9, 1978, at about 10:45 p.m., these two codefendants, acting in concert with a third person, who is not presently before the court, threatened the complainant with a knife and a car antenna, demanded money from him, and forcibly took a sum of money from him. The accusatory portion of the complaints charge the defendants with the crimes of robbery in the first degree (Penal Law, § 160.15), a class B felony; grand larceny in the third degree (Penal Law, § 155.30), a class E felony; and the class A misdemeanors of criminal possession of stolen property in the third degree (Penal Law, § 165.40) and criminal possession of a weapon in the fourth degree (Penal Law, § 265.01).
Initially, it must be noted that only the robbery count is properly before this court, as of the four charges it alone has been made a crime for which a juvenile offender of 14 or 15 years of age is criminally responsible under subdivision 18 of section 10.00 and subdivision 2 of section 30.00 of the Penal Law. The Assistant District Attorney has informed the court that the remaining three charges were drawn up on the complaint in anticipation of the possibility of the defendants turning out to be 16 years of age or older, rather than the ages they had stated to the arresting officers and to aid the court in defining the juvenile delinquent acts (Family Ct Act, § 712, subd [a]) performed by the defendants in the event the action is ultimately removed to the Family Court pursuant to CPL 725.00.
*600 On November 21, 1978, pursuant to defendant’s motions, this court conducted a removal inquiry proceeding, in accordance with CPL 180.75 (subd 4, par [a])[1] and 180.75 (subd 5),[2] to determine whether the interests of justice require that this action be removed to the Family Court rather than remaining in the adult criminal justice system.
The Legislature, by authorizing this court to make "inquiry” to its satisfaction, has recognized that the nature of this proceeding calls for greater informality and the relaxation of the strict evidentiary standards pertaining to a probable cause hearing upon a felony complaint conducted pursuant to CPL 180.75 (subd 3, par [a]) which requires compliance with CPL 180.60. In particular, the hearsay prohibition of CPL 180.60 (subd 8) would unduly hamper the court’s ability to expeditiously construct a complete history and profile of the juvenile defendant, which are essential to a determination of the appropriateness of a removal to the Family Court.[3]
The nature of the statutory mandate given to this court by CPL 180.75 (subd 4) to remove an action to the Family Court when the interests of justice so require, inherently eschews any rigid formulation of criteria that would fetter the court’s discretion. However, as was the case in the judicial construction of CPL 170.40 and 210.40, dealing with the court’s power to dismiss an accusatory instrument in the interests of justice,[4] some basic considerations may be listed as a starting *601 point for the court’s deliberations on the question of removal,[5] as follows:
(a) The nature of the crime charged and the circumstances of its commission, whether it was a crime against persons or against property, the former being given greater weight.
(b) Physical and psychological injuries sustained by the victim.
(c) The premeditated, predatory, violent, and heinous nature of the crime alleged.
(d) The degree of the defendant’s participation in the crime if he did not act alone.
(e) The defendant’s age, intelligence, maturity, character, reputation, habits, physical and mental condition, emotional attitude and pattern of living.
(f) The defendant’s prior contacts with the law, Family Court history, school attendance record, work history, family ties, home and social environment, and length of residence within the community.
(g) The weight and quality of the evidence against the defendant.
(h) The necessity of prosecution of the defendant in the adult criminal justice system to adequately address the interest of protection of the public.
(i) The scope of punishment to which the defendant would be subject in Family Court in the event the case is removed.
(j) The programs and services available in the Family Court setting that present a realistic likelihood of the rehabilitation of the defendant.[6]
In the instant removal inquiry proceedings, neither the People nor the defense called any witnesses to the crime. Each *602 party, instead, offered its own version of the events that are the basis of the robbery charge. The People stated that the two defendants at bar, acting in concert with a third juvenile, planned the commission of the robbery, taking the precaution of stationing the third juvenile as a "look-out.” The People allege that defendant Midna Rodriquez was armed with and displayed a knife and that defendant Roberto Martinez was armed with a car antenna when they followed the 62-year-old complainant into the foyer of the building and forcibly took money from him by threatening violence. The People also allege that defendant Roberto Martinez struck the complainant on the back with the car antenna; however the People concede that the complainant did not sustain any physical injury from the blow. It is further alleged by the People that the events of the robbery were witnessed by the police officers who arrested both defendants as they fled the foyer to the street.
Defense counsel for Midna Rodriquez contested the People’s allegation that she openly displayed a knife during the commission of the robbery, although counsel did concede that Rodriquez was in possession of a knife during the incident.
Defense counsel for Roberto Martinez maintained that Midna Rodriquez was the mastermind and chief protagonist of the crime, Martinez and the other male juvenile being subjected to Rodriquez’s domineering personality and will in carrying out her plan.
As noted above, the prohibition of hearsay evidence found in CPL 180.60 (subd 8) is inapplicable to this removal inquiry conducted pursuant to CPL 180.75 (subd 5); the sworn felony complaints are therefore admissible into evidence in this inquiry upon the issue of the factual events of the alleged crime. For purposes of deciding the present removal motion, the court will proceed upon the assumption of the veracity and accuracy of the factual allegations contained in the felony complaints that were sworn to by the arresting officers who observed the entire incident. As stated above, the felony complaints allege that the complainant was threatened with a knife and car antenna.
From the evidence submitted and the presentation made by defense counsel on behalf of Roberto Martinez, the court has gleaned the following biographical data concerning the defendant. The defendant and his family emigrated to the United *603 States from Puerto Rico in 1972. Except for a period of eight months when they returned to Puerto Rico because of the illness of defendant’s grandfather, the family had lived as a cohesive unit on the lower east side of New York City from 1972 until shortly before the date of the incident. Four years ago the defendant sustained a head injury in a car accident. Since then his behavior has been unstable and erratic. The defendant’s mother has made diligent efforts to seek help for her son, which included enrolling him in a special school for the socially maladjusted and educationally handicapped. In June of this year the defendant’s mother sought medical treatment for her son’s emotional and mental problems. A letter written by Dr. Roberto De Paula was submitted into evidence. It states that Dr. De Paula treated the defendant on four occasions in June, 1978. It further states that he found the defendant to have average intelligence; memory and attention within normal limits; and fair judgment and insight. Dr. De Paula started the defendant on medication that had had the intended result of causing the defendant to feel less anxious and depressed, accompanied by improvement in the defendant’s behavior and performance in school. The defendant was last seen by Dr. De Paula on June 29, 1978. At that time the doctor had made an impression diagnosis of the defendant of psychotic depression.
At the inquiry, the defendant’s mother testified that at the date of the incident the prescription for his medication had been exhausted and consequently the defendant was not medicated at the time. She further testified that the family had recently moved to Brooklyn, intending thereby to remove Roberto from the harmful social environment he was subject to in the lower east side. Evidence was also introduced indicating that while living on the lower east side Roberto had entered into a relationship with Midna Rodriquez, wherein Midna acted as Roberto’s protector, subjecting Roberto to her influence by virtue of her domineering personality.
On the date of the alleged crime, Roberto’s family had returned to the lower east side on a holiday outing to visit their friends and neighbors. It was under these circumstances that Roberto again came under the influence of Midna Rodriquez, which led to his participation in the incident.
In applying the afore-mentioned relevant removal criteria to the case of Roberto Martinez, the court finds it significant that this is Roberto’s first brush with the law. A search of the *604 Family Court records has revealed that he has had no encounters of any kind with that court.
The court also takes cognizance of the fact that robbery in the first degree is a designated felony under subdivision (h) of section 712 of the Family Court Act. Thus, if the Family Court concludes after a fact-finding hearing that Roberto committed this felony, that court in its discretion may order a restrictive placement of the defendant (Family Ct Act, § 753-a, subd 1). Under the terms of such a restrictive placement, Roberto would be placed with the division for youth for an initial period of 3 years, the first 6 to 12 months being spent in confinement in a secure facility (Family Ct Act, § 753-a, subd 4, par [a], cl [ii]), followed by confinement in a residential facility for a period of 6 to 12 months (Family Ct Act, § 753-a, subd 4, par [a], cl [iii]). Furthermore, placement could be extended by the Family Court beyond this three-year initial period, if required, until the defendant reached 21 years of age (Family Ct Act, § 753-a, subd 4, par [d]).
The court has been impressed with the concern and care shown by Roberto’s mother, the remedial efforts she has made on his behalf, and the defendant’s familial home environment. The court has considered the nature and circumstances of the crime charged including the mitigating factors of the absence of injuries to the complainant and the fact that the crime was not committed in a particular heinous manner. The evidence presented strongly indicates that in regard to Roberto the incident in question was an isolated occurrence rather than representative of a pattern of criminal behavior. The court has also considered the inimical influence defendant Rodriquez has exerted upon Roberto.
A review of the entire record presented in this inquiry in regard to Roberto Martinez has led the court to the conclusion that the interests of justice require removal of the action against him to Family Court. The interests of public safety will be fully protected by prosecution of Roberto Martinez in Family Court. Removal will not threaten the public interest or be inconsistent with the ends of justice or the best interests of the juvenile, the complainant and the public.
Turning next to the motion for removal of the action against defendant Midna Rodriquez, the court is constrained to deny the motion at this time. The Family Court records reveal that her participation in the present incident came on the heels of a commercial burglary perpetrated by her on *605 August 5, 1978, the action commenced in the Family Court ultimately being adjusted at the probation intake stage. Her school records bear notations indicating that she has a violent and disruptive personality. In light of all the evidence submitted to the court in regard to Midna Rodriquez, the court has formed the impression that she is a mature, tough, street-wise individual of average intelligence, protective toward those of her peers that she considers friends, intimidating and violent toward those who are not. The court recognizes that the root of Midna’s antisocial behavior may lie with her unstable home life. However, a review of all the facts and circumstances of the case and evidence in regard to Midna Rodriquez has led the court, after application of the afore-mentioned criteria, to the conclusion that removal of the action against her to Family Court at this point would not be in the interest of justice. While finding removal at the present time to be inappropriate, the court notes that the prospect remains of removal at a subsequent stage of the proceeding, by a Grand Jury at the conclusion of its deliberations (CPL 190.71), or even after conviction of the crime charged (CPL 330.25).
Based on the foregoing, the court grants the motion to remove the action against Roberto Martinez to the Family Court; the motion for removal of the action against Midna Rodriquez is denied.

. CPL 180.75 (subd 4, par [a]) provides in relevant part, that "the court, on motion of any party or on its own motion may, and shall, at the request of the district attorney, order removal of an action, except one involving a complaint charging a juvenile offender with murder in the second degree, or an armed felony as defined in subdivision forty-one of section 1.20 of this chapter, to the family court pursuant to the provisions of article seven hundred twenty-five of this chapter, if it is determined that to do so would be in the interests of justice.”

. CPL 180.75 (subd 5) provides: "For the purpose of making a determination pursuant to subdivision four hereof, the court may make such inquiry as it deems necessary.”

. See People ex rel. Pringle v Conway (121 Mise 620, 621) wherein the court held in regard to a proceeding conducted by it under section 205 of the Code of Criminal Procedure: "Any information from any source pertinent to the examination before the magistrate should be brought to his attention, and it is natural that such magistrate should desire the fullest information in order to arrive at a just conclusion upon the merits. A hearing before a magistrate is not a prosecution. It is an inquiry. It is a court of informality in a way, and much latitude is accorded the magistrate in his personal examination of witnesses. He has extensive powers as to how the examination may be conducted. There are few limitations that curtail his judicial activities.”

. (See People v Clayton, 41 AD2d 204.)

. (See Kent v United States, 383 US 541, 566-567.)

. In this regard the court notes the Legislature’s recognition of the ameliorative and socially corrective function of the Family Court enunciated in the following excerpt from the Report of the Joint Legislative Committee on Court Reorganization, The Family Court Act (McKinney’s Session Laws of NY, 1962 [vol 2], pp 3428, 3433-3434): "Early in the history of the juvenile court movement, there was agreement that juvenile delinquency proceedings should be 'civil’, not 'criminal.’ This agreement was based on a sense of a child’s exuberance and vitality and the stress of the early years of life. The restraints and disciplines of adulthood have not yet been established. The possibilities of change are seemingly great. And so the decision was made to avoid a criminal conviction for the young and to shape the law and provide a court to guide and supervise, rather than punish, children in trouble. The Committee adheres to that decision”.