OPINION OF THE COURT
Gerald J. Beldock, J.
Defendant moves to dismiss the indictment pursuant to CPL 210.20 (subd [h]), alleging: that subdivision 18 of section 10.00 *553 of the Penal Law and section 30.00 of the Penal Law specifically exclude the infancy defense from being utilized when there is a charge of attempted murder, thus denying him equal protection of the law; that CPL 180.75 fails to provide for specific procedures and standards, thus denying him due process of the law, and that section 720.10 of the Penal Law denies persons under the age of 16 eligibility to youthful offender treatment on the basis of age alone, thus denying him equal protection of the law.
Defendant, aged 14, was indicted and charged as a juvenile offender for having committed the crimes of attempted murder in the second degree, robbery in the first degree, robbery in the second degree and burglary in the second degree (two counts). These charges arose from an incident that occurred on December 13, 1978, wherein it is alleged defendant was aided by others in attempting to cause the death of a person by throwing him off the roof of a multiple story dwelling. It is also alleged that defendant took certain items of property from the complainant without the permission of complainant.
There is no fundamental right to be treated as a juvenile. The common law treated infants in the same manner as adults (People v Cook, 37 NY2d 591, 595; Matter of Gault, 387 US 1; 43 CJS, Infants, § 196, pp 514-515). The present laws that provide for juvenile treatment "represented a shift in public attitudes, and was not the result of any declaration of unconstitutionality” (People v Williams, 97 Misc 2d 24, 34).
Where a statute is attacked as violative of equal protection of the law the courts have applied either the strict scrutiny or the rational basis test. These tests were set forth in San Antonio School Dist. v Rodriquez (411 US 1). "This, then, establishes the framework for our analysis. We must decide, first, whether the Texas system of financing public education operates to the disadvantage of some specific class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny. * * * If not, the Texas scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination of violation of the Equal Protection Clause of the Fourteenth Amendment.” (San Antonio School Dist. v Rodriquez, supra, p 17.)
The courts have determined that statutes directed at a specific race, national origin, religion, sex or a fundamental *554 right guaranteed by the United States Constitution are suspect and in such cases, have applied the strict scrutiny test (Frontiero v Richardson, 411 US 677). A reading of the juvenile offender law (L 1978, ch 481) indicates that these statutes were not directed at any class of individuals on account of race, national origin, religion, or sex. This court will thus apply the rational basis test.
The gravity of a crime with which a person is charged has been held to be a rational basis for distinguishing treatment (People v Drayton, 39 NY2d 580; People v Mollette, 87 Misc 2d 236, 242). In Marshall v United States (414 US 417) the Supreme Court held that a statute which denies persons with two prior convictions access, as of a right, to the same rehabilitative program as persons with less than two prior convictions was not a violation of the equal protection clause. There was no fundamental right to participate in the rehabilitative program and there was a rational basis for Congress to make the classification.
In the present case, as in Mollette (supra), the Legislature has classified the treatment of the defendants based upon the seriousness of the crime (Matter of Vega v Bell, 47 NY2d 543). A reading of subdivision 18 of section 10.00 and section 30.00 of the Penal Law indicates that the Legislature intended that those young persons who commit serious violations of the Penal Law to be treated differently than those young persons who commit nonserious violations. This is a rational basis for the distinction in treatment. Therefore, the juvenile offender statutes do not violate defendant’s rights to equal protection of the law.
Defendant also challenges the constitutionality of CPL 180.75 in that "the procedure for the determination of the issue of removal or retention of jurisdiction, and the proceedings conducted thereunder, are violative of procedural due process and equal protection under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution”.
CPL 180.75 (subd 4) states in part: "(a) the court, on the motion of any party or on its own motion may, and shall, at the request of the district attorney, order removal of an action * * * to the family court pursuant to the provisions of article seven hundred twenty-five of this chapter, if it is determined that to do so would be in the interests of justice”.
Defendant claims that this section is violative of his due process rights in that it fails to provide adequate notice to the *555 parent and child of the charges, fails to provide the opportunity to retain counsel, and fails to give defendant the right to call witnesses on his behalf.
An examination of the minutes of the hearing held in the Criminal Court, Part API, before Judge Moskowitz on January 2, 1979 reveals that defendant had notice of the charges against him and was represented by counsel at the hearing who cross-examined witnesses and called witnesses to testify on defendant’s behalf. Further, defendant’s mother was present in court and the Presiding Judge gave defendant the opportunity to present any evidence that he desired relevant to the issues of the hearing.
Defendant has been afforded all of the rights that he claims CPL 180.75 does not provide. He thus lacks standing to challenge the constitutionality of CPL 180.75 on those grounds. As the court stated in Matter of Abrams v New York City Tr. Auth. (48 AD2d 69, 70, affd 39 NY2d 990): "in determining whether there is 'a standing to sue’, it must be shown that petitioners’ personal or property rights will be directly and specifically affected.” "It is settled law that a petitioner making a general attack on legislative or administrative action or inaction must demonstrate special damages distinct from that suffered by the public at large”. (48 AD2d, at p 70.)
Defendant further claims that CPL 180.75 fails to provide specific standards and criteria to control the court in its decision to transfer or retain jurisdiction. This claim has no merit.
The primary purpose of CPL 180.75 is not to consider the issue of removal but to determine whether there is reasonable cause to hold defendant in custody pending action by a Grand Jury (Matter of Vega v Bell, 47 NY2d 543, supra; see, also, CPL 180.10).
In Matter of Vega v Bell (supra), defendant, age 15, was indicted for sodomy in the first degree and sought a writ of prohibition which was granted by the Appellate Division (Matter of Vega v Bell, 67 AD2d 420) and later dismissed by the Court of Appeals. The writ was sought on the ground that the Grand Jury lacked the power to indict defendant because he was not afforded a removal hearing in the Criminal Court as provided for in CPL 180.75.
The Court of Appeals rejected defendant’s interpretation of CPL 180.75 and dismissed the writ. In reaching the conclusion *556 that the failure to provide petitioner with a removal hearing at the local Criminal Court did not deprive the Grand Jury of its power to indict, the court stated, inter alia, that it was the Legislature’s intent, in enacting the juvenile offender law, to have most of the serious felonies committed by persons between the ages of 13 and 15 tried in the superior court. It is the exceptional case rather than the typical case that was intended to be transferred to the Family Court.
Kent v United States (383 US 541), discussed in the Vega case, is distinguishable and not applicable here because the statutory plan involved in the Kent case differs from the statutory plan employed in the Vega case. The statutory plan underlying the Kent case establishes that juveniles who are initially subject to the original jurisdiction of the juvenile court must be afforded a hearing before the case may be transferred to the adult criminal justice system. Under the statutory plan of the New York Legislature, all juveniles over a certain age who have committed certain designated crimes are automatically prosecuted in the adult criminal justice system. As stated by the court in Vega (p 551): "Hence there exists no opportunity for that which the Supreme Court found to be abhorrent in Kent: namely, the possibility that some juveniles would be arbitrarily transferred to the adult criminal system, thereby subjecting them to significantly harsher potential penalties than could be imposed upon the majority of juveniles who engaged in similar antisocial behavior. Under the New York plan, in contradistinction, all juveniles accused of certain designated crimes are subject to the adult criminal system, except in those unusual cases in which treatment as a juvenile is deemed appropriate.”
Furthermore, there is no violation of defendant’s right of due process under the juvenile offender law when he is not afforded a removal hearing in the criminal court because the superior court has the inherent power to transfer the case to the Family Court in the interest of justice pursuant to CPL 210.40 when it becomes aware of exceptional circumstances that would warrant transferring the case to the Family Court (Matter of Vega v Bell, supra).
Contrary to defendant’s claim that CPL 180.75 fails to provide specific standards and criteria, this court notes that this section provides that the court may order removal of a case to the Family Court if it determines that it would be in the interest of justice.
*557 The court in People v Williams (97 Misc 2d 24, 31, supra) stated: "Legislative enactments permitting courts to make variety of determinations 'in the interests of justice’ or in 'furtherance of justice,’ are not new to our State with the enactment of CPL 180.75. These enactments have been an integral part of the criminal procedural process for many years, and appear throughout the CPL.” More significantly, the interest of justice standard has not been declared unconstitutional by the appellate courts (Matter of Vega v Bell, 47 NY2d 543, supra). Criteria have been set forth by the various courts (see People v Clayton, 41 AD2d 204, 208; People v Martinez, 97 Misc 2d 598, setting forth criteria for the removal herein).[1]
"A statute should not ordinarily be set aside as unconstitutional by a court of original jurisdiction unless the conclusion is inescapable. Courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional except in rare cases involving life and liberty, and where invalidity of the act is apparent on its face” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, p 312; National Psychological Assn. for Psychoanalysis v University of State of N. Y., 18 Misc 2d 722, 725-726, affd 10 AD2d 688, affd 8 NY2d 197, app dsmd 365 US 298). Section 150 goes on to state (p 314): "Every presumption will be indulged in to support as sustaining legislation, and it will be assumed that the Legislature intended to enact a statute which is in harmony with the federal and state constitutions.” Every presumption is in favor of the validity of the statute and, likewise every intendment offers its validity. "The burden of showing the unconstitutionality of a statute is on the party asserting it who must demonstrate such fact beyond a reasonable doubt” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, p 320). The courts are guided by the principle that an inferior court should exercise restraint in declaring a statute unconstitutional (Matter of Van Berkel v Power, 16 NY2d 37; Matter of Ahern v South Buffalo Ry. Co., 303 NY 545; People v Estrada, 80 Misc 2d 608).
Defendant further claims that the juvenile offender law violates the equal protection clause of the Constitution in that a person under the age of 16 who is convicted of the same *558 crime as a person between the ages of 16 and 19 may not receive youthful offender treatment (People v Michael D., 99 Misc 2d 816; cf. People v Mason, 99 Misc 2d 583; People v Bates, NYLJ, June 1, 1979, p 13, col 1). Defendant has not been tried and convicted. Thus, the issue of the unconstitutionality of the denial of youthful offender treatment to defendants under the age of 16 has been prematurely raised and the court will not pass upon that issue (see Massachusetts v Mellon, 262 US 447).[2]
Defendant has not met his burden of proving the unconstitutionality of the statutes in question beyond a reasonable doubt (Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 541; Nettleton Co. v Diamond, 27 NY2d 182, app dsmd sub nom. Reptile Prods. Assn. v Diamond, 401 US 969).
Accordingly, the motion is denied in all respects.

. This court notes that the Legislature has adopted new legislation which establishes more specific guidelines for the exercise of the power to remove in the interests of justice. (L 1979, ch 411; Matter of Vega v Bell, supra.)

. This court notes that the Legislature has adopted new legislation which provides for youthful offender treatment to juvenile offenders (L 1979, ch 411).