OPINION OF THE COURT
Gabrielli, J.
We are called upon in this article 78 proceeding to *546 determine whether a juvenile offender may be indicted by a Grand Jury and be brought to trial without first being afforded a hearing in a local criminal court on the issue whether the interests of justice require removal of the action to Family Court for treatment as a juvenile delinquency proceeding. We conclude that a local criminal court hearing is not a jurisdictional prerequisite to indictment by a Grand Jury, and thus there exists no bar to continuation of criminal proceedings commenced by Grand Jury indictment despite the failure to hold a removal hearing in a local criminal court.
Petitioner, then 15 years of age, was arrested on October 4, 1978 and arraigned the following day in the Criminal Court of the City of New York, Bronx County, upon a felony complaint charging him with one count of sodomy in the first degree. The complaint alleged that petitioner had engaged in deviate sexual intercourse with a minor by forcible compulsion. On October 11, petitioner requested both a felony hearing and removal of the case to the Family Court. The prosecutor informed the court that on the previous day a Grand Jury had voted to indict petitioner on four counts of sodomy in the first degree based on four incidents, one of which formed the basis for the felony complaint. Reasoning that it lacked the power to continue the proceeding before it after the Grand Jury had acted, the court denied petitioner’s applications for a felony hearing and for removal to Family Court, and instead transferred the action to the appropriate superior criminal court, Supreme Court, Bronx County.
Petitioner subsequently moved in Supreme Court, Bronx County, to transfer the action back to Criminal Court for resolution of his removal motion on the merits. Following the denial of the transfer motion, petitioner commenced the instant article 78 proceeding seeking to prohibit his prosecution on the ground that the Grand Jury lacked the power to indict him unless the local criminal court first provided him a hearing on his removal motion. The Appellate Division granted the petition, over a dissent by two Justices, and respondents now appeal to this court as of right pursuant to CPLR 5601 (subd [a], par [i]).
As petitioner has chosen to raise his claim in the context of an article 78 proceeding seeking the extraordinary remedy of a writ of prohibition, he is subject to the limitations controlling the issuance of such a writ. As we stated in Matter of Dondi v Jones (40 NY2d 8, 13): "[T]he extraordinary remedy *547 of prohibition lies only where there is a clear legal right and only when the body or officer 'acts or threatens to act without jurisdiction in a matter over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction’ (Matter of State of New York v King, 36 NY2d 59, 62; Matter of Nigrone v Murtagh, 36 NY2d 421, 423-424). It must be directed to some inferior judicial tribunal or officer and lies to prevent or control judicial or quasi-judicial action only, as distinguished from legislative, executive or ministerial action (Matter of Kaney v New York State Civ. Serv. Comm., 190 Misc 944, 951, affd 273 App Div 1054, affd 298 NY 707; 23 Carmody-Wait 2d, NY Prac, § 145:215, p 788; see Comment: The Writ of Prohibition in New York — Attempt to Circumscribe an Elusive Concept, 50 St John’s L Rev 76, 84)” (accord Matter of Jaffe v Scheinman, 47 NY2d 188, 192-193; Matter of B. T. Prods. v Barr, 44 NY2d 226, 231-232; Matter of Steingut v Gold, 42 NY2d 311, 315-316). As it is petitioner’s claim that he may not be brought to trial upon the pending indictment because the Grand Jury lacked the power to indict him, this is clearly a proper case for issuance of the writ of prohibition should petitioner’s substantive arguments prove sound. Accordingly, we now turn our attention to the validity of those contentions.
Prior to September 1, 1978, children under the age of 16 were not subject to criminal sanctions in New York State in any circumstances. Instead, juveniles who performed acts which would have been crimes had they been committed by adults, were all dealt with through a separate juvenile delinquency system (see Family Ct Act, art 7). This method of attempting to deal with the problem of criminal actions performed by juveniles was deemed somewhat less than completely successful by many, especially as public attention in recent years focused on what has been perceived to be an increase in the rate of acts of violence by minors. Responding to this troublesome state of affairs, the Legislature last year made certain substantial modifications in the traditional mechanisms for resolving the problem of juvenile crime (see L 1978, chs 478, 481). Among other drastic changes in the law, juveniles between the ages of 13 and 15 who are charged with certain enumerated, serious crimes of violence are now classified as "juvenile offenders” and are prosecuted within the adult criminal justice system (CPL 1.20, subd 42; Penal Law, § 10.00, subd 18; § 30.00, subd 2).
*548 While deciding that such harsh measures were necessary to control violent juvenile crime in the face of what was considered to be the failure of the traditional means of treating that problem, the Legislature nonetheless remained sensitive to the fact that special considerations are sometimes appropriate when dealing with juveniles, who are more easily influenced by their companions and their environment than are adults, Hence, rather than simply applying every feature of the adult criminal justice system to juvenile offenders, the Legislature carefully created several modifications in normal procedure so as to displace "the ones applicable to adults insofar as they would be inappropriate or incongruous to the handling of such 'juveniles’ charged with very serious crimes” (Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 180.75). Of special significance in the instant case are several provisions whereby, at various stages in a criminal proceeding, a juvenile offender may be removed to Family Court if it becomes apparent in a particular case that such treatment would be more appropriate than continuation of criminal prosecution (see CPL 180.75, 220.10, subd 5, par [h]; 330.25).
Most of these provisions provide for removal to Family Court only with the approval of the District Attorney. CPL 180.75 (subd 4), however, provides that where a juvenile offender is arraigned before a local criminal court upon a felony complaint, that court may order, even over the objection of the District Attorney, that the defendant be removed to Family Court in the interests of justice unless the defendant is accused of either murder in the second degree or an armed felony (CPL 1.20, subd 41). Petitioner contends that this is the only stage in a criminal proceeding against a juvenile offender at which a court may order removal of the accused to Family Court despite the objections of the District Attorney. Petitioner suggests that since the Legislature deemed it necessary to provide such a safety valve, it must have intended that mechanism to be applicable to every alleged juvenile offender. Hence, petitioner would have us interpret the statutory scheme governing the prosecution of juvenile offenders as requiring that each juvenile defendant must be granted a hearing before a local criminal court to decide whether the interests of justice mandate removal to Family Court, before he or she may be indicted by a Grand Jury. In addition to his statutory arguments, petitioner con *549 tends that due process mandates a full hearing to determine whether a juvenile may be prosecuted in the adult criminal justice system or whether he or she should be removed to Family Court. Finally, it is also suggested that a scheme whereby only those juvenile offenders who are arraigned before a local criminal court are afforded an opportunity for removal without the consent of the District Attorney would itself be so inherently arbitrary as to violate due process.
Our examination of the statutes, however, persuades us that a juvenile offender may indeed be indicted by a Grand Jury without first being afforded a removal hearing before a local criminal court. Petitioner’s arguments are based on a misunderstanding of the nature and function of CPL 180.75. That section deals only with those accused juvenile offenders who have been arrested and are arraigned on a felony complaint prior to Grand Jury action. The primary function of the section is to provide a prompt felony hearing, similar to that granted to an accused adult defendant (see CPL 180.10, subd 2). In both situations, the primary purpose of such a hearing and such a procedure is to determine whether there exists reasonable cause to hold a defendant in custody pending action by a Grand Jury (see CPL 180.10, subd 1; Staff Comments to Proposed CPL 90.60; People v Jackson, 48 Misc 2d 1026, 1027-1028; Pitler, New York Criminal Practice Under the CPL, § 4.30). It is a preliminary proceeding at which a preliminary determination is made pending a decision by the Grand Jury as to whether there exists probable cause to indict. Once the Grand Jury does act, the determination whether there exist reasonable cause to hold and prosecute a defendant has been made by the Grand Jury itself, the body constitutionally authorized to make that decision (NY Const, art 1, § 6), and hence the need for a felony hearing is obviated. The power of the Grand Jury to indict felons is in no way dependent upon the existence of a prior felony hearing, for the purpose of the felony hearing is simply to temporarily determine the fate of the accused pending Grand Jury consideration. Thus, an otherwise valid indictment is not tainted by any error at the felony hearing, since "the Grand Jury [has] power to investigate and indict regardless of what [has] occurred before the magistrate and regardless of whether the magistrate had held or discharged the prisoner or still had the matter pending, or of whether there had ever been such a *550 preliminary hearing” (People ex rel. Hirschberg v Close, 1 NY2d 258, 261).[1]
Defendant would have us hold that simply because the Legislature has seen fit to provide the local criminal court with additional dispositional powers at the felony complaint arraignment state, it has in some way made arraignment before a local criminal court a necessary jurisdictional predicate for indictment by a Grand Jury. Were this so, it would mean that no juvenile offender could be indicted without first being arrested upon a felony complaint and arraigned before a local criminal court, since that is the way in which a juvenile is brought before a local criminal court pursuant to CPL 180.75. Such a result would be unthinkable, for the Grand Jury certainly has the power to indict a person not yet arrested or arraigned. Indeed, to require arrest and arraignment as a prerequisite to Grand Jury consideration would be to mandate unnecessary preindictment incarceration and to place a totally unneeded burden upon the judicial system.
The Legislature’s decision to provide a local criminal court with power to remove an accused juvenile offender to Family Court was plainly intended to serve as a means of removing from the criminal system as quickly as possible those juveniles who, because of exceptional circumstances, can be dealt with more effectively within the juvenile system. It was not intended to mandate local criminal court consideration of every alleged juvenile offender as a prerequisite to Grand Jury consideration. We decline petitioner’s invitation to interpret the statutory scheme as creating such a novel and cumbersome mechanism without a much clearer indication of legislative intent to so elevate local criminal court arraignment proceedings.
Nor are we persuaded by petitioner’s contention that due process requires that an accused juvenile offender be provided with a hearing at the local criminal court, or elsewhere, to determine whether the interests of justice require removal to Family Court before that defendant may be prosecuted within the adult criminal justice system. This argument is based in large part on the decision of the United States Supreme Court in Kent v United States (383 US 541). We consider that reliance to be misplaced. In Kent, the Supreme Court held *551 that due process mandates a hearing before a juvenile can be transferred from the "exclusive jurisdiction” of a juvenile court into the adult criminal justice system. The statutory plan underlying that decision established a juvenile justice system whereby all juveniles were initially and presumptively subject to the exclusive jurisdiction of the juvenile court unless the juvenile court deemed it proper to waive its jurisdiction and transfer a particular minor to the jurisdiction of the criminal courts (Kent v United States, supra, at pp 547-548). Obviously, under that system the great majority of minor offenders were to be treated within the framework of the juvenile system, and transferral to the adult criminal justice system was envisioned only in certain rare instances in which it was determined that treatment as a juvenile would be ineffectual. Because of the significant effects of such a transfer, and the potentially severe results, the Supreme Court ruled that due process mandated a hearing lest the decision to transfer be an arbitrary one by which randomly selected juveniles were subjected to the adult system while most of their peers continued to reap the benefits of their status as juveniles.
The current New York statutory scheme, on the other hand, is significantly different. All youngsters over a certain age who are accused of certain criminal activities are now automatically prosecuted within the adult criminal justice system unless there exist certain special circumstances warranting more lenient treatment and transfer to the Family Court. Hence there exists no opportunity for that which the Supreme Court found to be abhorrent in Kent: namely, the possibility that some juveniles would be arbitrarily transferred to the adult criminal system, thereby subjecting them to significantly harsher potential penalties than could be imposed upon the majority of juveniles who engaged in similar antisocial behavior. Under the New York plan, in contradistinction, all juveniles accused of certain designated crimes are subject to the adult criminal system, except in those unusual cases in which treatment as a juvenile is deemed appropriate.
This is not to suggest, of course, that the decision whether to remove a particular juvenile to Family Court in the interests of justice may be a completely arbitrary one. Hence, were we to interpret the statutory scheme as affording the opportunity for possible removal over the opposition of the District Attorney only to those juveniles who are arraigned in a local *552 criminal court, there might well be some doubt as to the validity of such a plan. It would seem somewhat unreasonable to provide such a potential benefit only to those juveniles whose behavior is such that immediate arrest is deemed necessary, while denying it to those youths left at liberty pending consideration by a Grand Jury.
As it is, however, we need not reach this question, for we view the statutory scheme as providing the power to remove an accused juvenile offender to Family Court in the interests of justice and over the objections of the prosecutor to superior criminal courts following Grand Jury indictment, as well as to local criminal courts at arraignment. We are cognizant of the fact that no such power was explicitly given superior criminal courts when the Legislature revised the traditional juvenile justice system in 1978. Indeed, the Legislature did specifically provide several opportunities for removal with the consent of the District Attorney. This does not lead us to conclude, however, that this was because the Legislature wished only the local criminal courts to have the power to remove over the objection of the District Attorney, for such a result would be unreasonable, and it is the duty of the courts to interpret statutes so as to reach a reasonable result whenever possible. Hence, we conclude that the Legislature’s failure to explicitly grant such powers to the superior criminal courts was based on the belief of the Legislature that such a grant was unnecessary because such a power was impliedly founded in the superior criminal courts’ authority to dismiss an indictment in the interests of justice (see CPL 210.40). Surely the power to remove in the interests of justice, which is a much lesser relief than outright dismissal in the interests of justice, must be deemed to be included within the power to dismiss. Hence, although CPL 210.40 does not expressly provide superior criminal courts with the power to remove an accused juvenile offender to Family Court in thé interests of justice and over the objections of the District Attorney, it is certainly reasonable to conclude that the statute impliedly provides such power, especially since such an interpretation is necessary to avoid doubts as to the validity of the statutory scheme.[2] Although it *553 might be suggested that the existence of this power is at odds with the explicit provision of several opportunities to remove with the consent of the prosecutor, we would interpret the latter sections as indicative of a legislative intent that removal over the District Attorney’s objections only be ordered in the exceptional case. At the same time, the Legislature deemed it necessary to provide some authority to remove without the District Attorney’s approval because of its realization that in certain rare instances a prosecutor may be too closely involved in the prosecution to appreciate the benefits of juvenile treatment.
Finally, we reject petitioner’s suggestion that a hearing will in all cases be necessary to determine whether the interests of justice mandate removal to Family Court. This is a matter best left to the sound discretion of the court in which the removal motion is made. We note that the Legislature has already decided that in most cases juveniles accused of certain serious crimes are to be prosecuted within the criminal justice system. It is not for the courts to question the wisdom of this legislative decision, nor to seek to undermine its operation by removal to Family Court in the "typical” case, if indeed any case involving juveniles can ever be deemed typical. At any rate, under the present scheme it will only be in the unusual or exceptional case that removal will be proper, and thus a hearing will be necessary only if it appears for some special reason that removal would be appropriate in the particular case.
In sum, we conclude that the failure to provide petitioner with a removal hearing at the local criminal court did not deprive the Grand Jury of the power to indict him. Hence, there exists no jurisdictional bar to the continuation of his prosecution, and no basis for issuance of a writ of prohibition.
Accordingly, the judgment appealed from should be reversed, without costs, and the petition seeking a writ of prohibition should be dismissed.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
Judgment reversed, etc.

. Of course, extreme and unjustified preindictment delay may in certain unusual circumstances mandate dismissal of an indictment upon due process grounds (see People v Singer, 44 NY2d 241).

. We note the adoption on July 7, 1979 of legislation which will clarify this situation somewhat by removing from local criminal courts the power to remove to Family Court in the interests of justice over the objection of the District Attorney, and instead specifically providing only superior criminal courts with that power (L 1979, ch 411). Additionally, the new legislation establishes more specific guidelines for *553 the exercise of the power to remove in the interests of justice (see, also, L 1979, ch 216; cf. People v Belge, 41 NY2d 60, 62; People v Clayton, 41 AD2d 204).