OPINION OF THE COURT
Mario J. Rossetti, J.
Defendant, an alleged juvenile offender, has been indicted for assault in the first degree (two counts) and criminal possession of a weapon in the fourth degree and seeks removal of this matter to Family Court pursuant to CPL 210.43. A hearing was held on May 10, 1993.
The defendant, prior to indictment and while the felony complaint was pending and undetermined in the Town Court of Cheektowaga, and not having waived a preliminary hearing, properly applied to the superior court (Erie County Court) with notice to the People seeking the same relief requested herein (CPL 180.75, 210.43).
While the superior court was contemplating its decision, the District Attorney’s Office, ex parte, moved in the Cheektowaga Court to dismiss the pending felony complaint for direct presentment to the Grand Jury, which motion was granted.
Thereafter, the District Attorney’s Office, again ex parte, advised the superior court Judge of this dismissal and contended that the defendant’s application be denied on the basis that the issue was moot. After permitting defense counsel oral argument, the court granted the District Attorney’s request, dismissing defendant’s motion without prejudice to defendant to renew his application if indicted.
CPL 180.75 (5) authorizes a motion for removal to Family Court providing the felony complaint is presently undetermined and a preliminary hearing has not been waived or commenced. Once these prerequisites are met, subdivision (5) further provides that the superior court "shall be authorized to sit as a local criminal court to exercise the preliminary jurisdiction specified in subdivisions two and three of this section, and shall proceed and determine the motion as provided in section 210.43” (emphasis added). Since this language *874 is mandatory and not directory (see, People v Schonfeld, 74 NY2d 324; People v Ricken, 29 AD2d 192, affd 27 NY2d 923; Matter of Costello v Timothy R., 109 AD2d 933; Matter of Saunders v Smith, 99 AD2d 671; McKinney’s Cons Laws of NY, Book 1, Statutes § 95 et seqj, once the motion has been made, the superior court is required to hear and determine same on its merits, and the local criminal court is necessarily divested of the jurisdiction it possessed prior to defendant’s motion. Any other interpretation would create the unacceptable concurrent and simultaneous jurisdiction by both the local and superior courts and would permit the dismissal of the felony complaint by the local criminal court at any time prior to the superior court’s entry of an order determining the motion, even after a full and complete hearing. Such absurd, wasteful, and incongruous consequences unequivocally were not the Legislature’s intent. A fair, consistent, and reasonable interpretation of the statute does not permit the District Attorney, by motion, or the local criminal court, therefore, to divest a superior court’s mandatory duty to determine a removal motion on its merits (see generally, McKinney’s Cons Law of NY, Book 1, Statutes § 95 et seq.).
The criticisms inherent in the procedure utilized by the District Attorney include an appearance of impropriety, i.e., forum shopping, as well as an infringement of a juvenile’s due process right to have the matter resolved as expeditiously as possible. As the indictment herein was returned almost two months after the superior court Judge reserved decision on defendant’s initial removal motion, no exigency required the lower court dismissal.
Furthermore, there was nothing to prevent a Grand Jury from considering this matter while it was pending before the superior court and returning an indictment or no bill (see, CPL 180.75 [6] [e]).
Notwithstanding the aforesaid, as the defendant has not moved for dismissal of the indictment nor otherwise questioned the County Court’s decision to dismiss without prejudice, this court is required to determine the merits of the instant motion.
FINDINGS OF FACT
On November 12, 1992, at approximately 6:30 p.m., Robert G., date of birth December 3, 1976, was collecting monies from his newspaper customers. One of his stops included the home *875 of his friend Gregory C., the juvenile offender herein, date of birth October 14, 1978. Gregory C. then accompanied Robert G. for the remainder of the route. Upon joining Robert G., Gregory C. advised him that his knife was bothering him and lifted his pant leg to display a knife in a sheath taped to his leg.
As the two boys continued, another friend Michael A., date of birth October 27, 1977, joined them. After Robert G. completed his collections, Michael A. grabbed a baseball cap worn by Gregory C. and tossed it to Robert G. Michael A. and Robert G. continued to toss the hat between themselves, despite Gregory C.’s vehement protestations, and continued to do so for as long as 10 to 20 minutes (per the testimony of Robert G.). Gregory C., obviously enraged and upset, demanded the return of his hat and warned Michael A. that, if he didn’t return his hat, he was going to stab him. Michael A., apparently unfazed, retorted that if Gregory C. attempted to stab him he would kick him in the head. Gregory C. replied, "You don’t think I’ll stab you?” and Michael A. responded that he did not. Gregory C. then reached for his knife and, from a couple of feet away, swung it at Michael A., causing him to jump back. Michael A. then grabbed and held Gregory C. from behind while Robert G. held onto Gregory C.’s arm and attempted to take the knife from Gregory C. Robert G., however, lost his grip and Gregory C. subsequently stabbed Michael A. just below the left lung.
Michael A., bleeding, screamed for help, walked a short distance and fell to the ground. Robert G. told Gregory C. to remain with Michael A. while he ran home and called the police and an ambulance. Gregory C. remained with Michael A. until the police and ambulance arrived. Gregory C. asked Michael A. not to tell anyone that he had stabbed him, and that he’d "stitch him up” back at his home. When questioned by the police, Gregory C. stated that an unknown assailant had stabbed Michael A.
Michael A.’s injuries were serious, in fact, life threatening. He was hospitalized for three weeks and required surgery resulting in four significant scars. He is presently fully recovered.
DISCUSSION OF CPL 210.43 FACTORS

A. The seriousness and circumstances of the offense.

The offense is unquestionably serious, involving the use *876 of a knife to cause serious physical injury to the victim. Although inexcusable, it is not without some mitigating circumstances. The assault occurred only after the juvenile offender was taunted and teased by two older and physically larger individuals for a period of 10 to 20 minutes. It was the victim, in fact, who initiated the confrontation and only further agitated Gregory C. when threatened by the use of the knife. If the victim had returned the hat after the initial warning, instead of continuing his provocation by threatening to kick Gregory C. in the head, the stabbing most likely would have been avoided.
These circumstances clearly separate this crime from the "usual” case involving planned, unprovoked, and purposeful participation in violent criminal conduct, the type of behavior intended by the Legislature to be prosecuted as adult. Although we fully expect adults to walk away from the type of petty harrassment which occurred herein, it would be unfair and unwise to prosecute a newly turned 14 year old as an adult criminal when he fails to demonstrate that same quantum of maturity. The cases cited by the People are inapposite and truly not exceptional cases deserving removal as they involve a juvenile’s premeditated participation in wanton and unprovoked violent behavior (Matter of Vega v Bell, 47 NY2d 543 [sodomy in the first degree]; People v Sanchez, 128 AD2d 816, lv denied 70 NY2d 655 [robbery in the first degree]).

B. Extent of harm caused by the offense.

That the victim suffered serious physical injuries is indisputable. Other than the remaining scars, which cannot be discounted, the victim has fully recovered and is once again participating in his normal activities.

C. The evidence of guilt, whether admissible or inadmissible at trial.

The evidence that defendant stabbed the victim with a knife, thereby causing serious physical injuries, is uncontested. Proof that the stabbing was intentional, and not reckless or accidental, however, is not overwhelming. Since the actual stabbing occurred during a struggle for the knife between the juvenile offender and two older and larger individuals, it is questionable whether or not the People would be able to prove beyond a reasonable doubt that defendant stabbed the victim with the intent to cause a serious physical injury. A conviction for the lesser included offense of assault in the second degree under Penal Law § 120.05 (4) (recklessly causing serious physical injury by means of a dangerous *877 instrument) which this court believes is the more likely result, would require removal to Family Court (see, CPL 310.85, 1.20 [42]; Penal Law § 10.00 [18]; § 30.00 [2]).
The court further finds that the third count of the indictment, charging the juvenile offender with assault in the first degree under Penal Law § 120.10 (3) (under circumstances evincing a depraved indifference to human life), is unequivocally, under the facts of this incident, not conciliatory with nor supported by applicable case law (see generally, People v Register, 60 NY2d 270; People v Poplis, 30 NY2d 85; People v Osburn, 124 AD2d 1048 [4th Dept 1986]). Furthermore, it is not a crime for which a juvenile can be held criminally responsible (see, CPL 1.20 [42]; Penal Law § 10.00 [18]; § 30.00 [2]).

D. The history, character, and condition of the defendant.

Defendant is a 14-year-old boy, date of birth October 14, 1978, apparently raised in a somewhat dysfunctional family environment. His parents were divorced a short time prior to this incident, and defendant has had difficulty adjusting emotionally to their separation. Although defendant has had numerous behavioral citations in the schools he has attended, most have been relatively frivolous (i.e., bringing candy on a school bus) with the most serious for fighting. No one was ever threatened or injured by use of a weapon. None were serious enough to require his expulsion and no physical injuries resulted to anyone involved.
Defendant has no prior difficulties with law enforcement agencies. He has always been well-behaved, courteous, helpful, and polite with his elderly neighbors, and his behavior and grades have dramatically improved since his return to Cheektowaga High School in December 1992. His most recent guidance counselor, Susan Phillips, testified that she did not consider Gregory C. to be a threat to either other students or the community at large.

E. The purpose and effect of imposing upon the defendant a sentence authorized for the offense.

Were the juvenile offender convicted of the crimes charged, he could receive a sentence of incarceration with a maximum of seven years (Penal Law § 70.05). As the People have indicated, however, defendant is eligible for a youthful offender adjudication, and if so adjudicated, would not carry the onus of a felony conviction and could be sentenced to a five-year period of probation.
*878 The Penal Law, however, was not intended to address, nor does it address, the specific and unique problems and needs of juvenile offenders. The Family Court Act, on the other hand, was created for the specific purpose of addressing those problems. Its provisions include a broad array of investigative and diagnostic assessments. These include, but are not limited to, psychological tests and psychiatric interviews to determine mental capacity and achievement, emotional stability, and mental disabilities; clinical assessments of the situational factors that may have contributed to the felonious acts; and expert opinion as to the risk presented by the juvenile to others or himself, with a recommendation as to the need for a restrictive placement (see, Family Ct Act § 351.1). After a complete and thorough dispositional hearing, the Family Court determines whether or not the juvenile requires supervision, treatment, or confinement.
Were probation imposed, as recommended by the District Attorney, the Family Court Act provides for a period of two years, with an additional one year for exceptional circumstances (Family Ct Act § 353.2). The Penal Law probationary period would be for an initial five-year period, with provisions for an earlier discharge upon application of the Probation Department. Since the People have recommended probation, the only actual differences in the likely disposition is the length of the probationary period. The only other actual purpose and effect of imposing a penal sentence upon the juvenile offender would be to deny him and the community the broad range of provisions specifically implemented by the Legislature to address the needs and problems of the juvenile offender.

F. The impact of a removal of this case to the Family Court on the safety or welfare of the community.

Since the People are recommending a probationary disposition, and such disposition is available through Family Court, and since the Family Court Act includes provisions addressing the specific needs and problems of juvenile delinquency, removal of this case to the Family Court will not have an adverse impact on the safety or welfare of the community. If anything, removal to Family Court, with its emphasis on treatment and rehabilitation as opposed to punishment, would inure positively on the community’s safety and welfare. The juvenile is presently living at home with his father and attending high school full time. No one, not the high school principals, counselors, acquaintances, or the victim herein, has *879 articulated any fear of defendant, nor has defendant acted in a manner indicating that his continued freedom would threaten the safety or welfare of the community.

G. The impact of a removal of the case to the Family Court upon the confidence of the public in the criminal justice system.

The victim’s father has understandably testified that he would lose confidence in the criminal justice system if this case were transferred to Family Court. He has expressed the extent of his displeasure by testifying that, if the case were removed, he would approach the media to allege the unequal treatment of urban versus suburban juveniles. This court is aware of the emotional strain experienced by a father for his injured son, but the father must appreciate that, under the facts and circumstances of this incident, the court’s ruling would be the same no matter where it occurred or who it involved. This court does not believe that the public at large, when objectively viewing the unusual facts of this incident, would lose confidence in the criminal justice system if such a transfer was made.
It should be noted that the District Attorney has provided statistics that only 2 of 25 juvenile offenders have been transferred to Family Court in the last five years. These statistics, however, are meaningless and misleading without an indication of the facts and circumstances of those cases. As the District Attorney should be aware each case must be decided on its own facts, as statistical analysis has not been and manifestly cannot be, recognized by the courts of this State as a replacement for factual findings. Contrary to the District Attorney’s assertion, it appears to this court that this case is readily distinguishable from other crimes committed by juvenile offenders, most notably since this incident was initiated, continued, and provoked by the older, larger, and presumably more mature victim.

H. The attitude of the victim.

The victim, a 15-year-old boy, opposes removal of this case to Family Court. He testified that his opinion is based upon his perception that the defendant has shown no remorse. The defendant, the victim testified, has never apologized in person or by letter. The District Attorney has also emphasized the lack of a remorseful display to buttress their argument that the case should not be removed.
Although the victim herein would not, the District Attorney *880 should well know that every defense attorney instructs his client against making any statements to anyone, especially to the victim or his family, which could later be used against him. An apology can obviously be used as an admission and should not be expected prior to trial.
Notwithstanding the aforesaid, the fact that the defendant remained with the victim until the police and ambulance arrived, despite his fear of being arrested and blamed for the stabbing, is more probative of his concern and remorse than any words he could have subsequently articulated.
CONCLUSION
Pursuant to the foregoing, defendant’s motion for removal to Family Court, pursuant to CPL 210.43, is hereby granted. All official records and papers of this action, up to and including this order of removal, whether on file with the court, a police agency, or the Division of Criminal Justice Services, are hereby sealed pursuant to CPL 725.15. Defendant shall appear in Erie County Family Court on September 7, 1993, or as soon thereafter scheduled by said court. All pleadings and-proceedings are transferred to the Erie County Family Court and are to be delivered to and filed with the Clerk of that court (CPL 725.05 [7], [8]).