OPINION OF THE COURT
Harold J. Hughes, J.
This is a CPLR article 78 proceeding seeking a judgment prohibiting the Ulster County District Attorney from prosecuting petitioner Whitehurst for first or second degree murder in the death of Rickel Knox, and for an order closing this proceeding to the public and the media.* The respondent has moved for an order changing the venue of this proceeding from Albany County to Ulster County.
The essential facts are not in dispute for the purposes of this proceeding. Seven-year-old Rickel Knox was reported missing from her home in Kingston, New York, at approximately 4:30 p.m. on September 21, 1995. At approximately 6:30 p.m., Kingston police officers took petitioner Whitehurst to the Kingston Police Station and interrogated him concerning the child’s disappearance. Petitioner was interrogated extensively over the course of the next few days. On September 24,1995 a felony complaint charging petitioner with first degree kidnapping was signed and filed. Between 10:30 p.m. on September 24 and 1:00 a.m. on September 25, Ulster County Assistant District At *88 torney John Prizzia interrogated petitioner and requested his assistance in locating the missing girl. At that point in time, the District Attorney did not know whether or not the victim was alive. Without assistance of counsel, petitioner negotiated a cooperation agreement with Assistant District Attorney Prizzia which provides:
"This contract is to set forth in writing the agreement between the Ulster County District Attorney’s Office and the defendant, Larry Whitehurst. The agreement is as follows:
"1. It is agreed and understood that Larry Whitehurst currently stands charged with Kidnapping in the First Degree.
"2. It is further understood that Larry Whitehurst has indicated to the City of Kingston Police Department that he knows the location of Rickel Knox, and has indicated there is a possibility that she is still alive.
"3. In exchange for information as to the location of Rickel Knox, is agreed as follows:
"a. Larry Whitehurst must plead guilty to Kidnapping.
"b. There will be no Murder charge.
"c. If Rickel Knox is found alive, Larry Whitehurst will receive a minimum sentence of ten years.
"d. If she is found dead, Larry Whitehurst will receive a minimum sentence of between ten and fifteen years, depending on the surrounding facts and circumstances.
"e. In no event will Larry Whitehurst receive a minimum sentence of in excess of fifteen years if his cooperation leads to the discovery of Rickel Knox.
"4. Should Rickel Knox or her remains not be found, this agreement will be void and will have no force or effect,
"I have the right to go to trial and if so this contract is void”.
On September 25, 1995, petitioner Whitehurst led Mr. Prizzia and police officers to the victim’s body. Thereafter, District Attorney Kavanagh announced that he did not consider himself bound by the cooperation agreement, and that he would prosecute Mr. Whitehurst for first degree murder and seek the death penalty. This article 78 proceeding ensued.
The first issue to be decided is the respondent’s application to change the venue of this proceeding to Ulster County for the convenience of witnesses. Albany County is an available venue as an article 78 proceeding of this nature can be commenced in any county within the judicial district where the material events occurred (CPLR 506 [b]). To obtain a *89 change of venue based upon the convenience of material nonparty witnesses the moving party must submit an affidavit setting forth "the names, addresses and occupations of the prospective witnesses, a statement of what the party expects to prove by those witnesses, and the basis for the moving party’s belief that the witnesses will testify as stated” (Stoyer v Feeney, 165 AD2d 946). The respondent has not made the required showing. Moreover, since there will be a summary determination of the article 78 proceeding there is no material witness to be inconvenienced.
The next issue is petitioner’s request that this proceeding be closed to the public and the press. The press and public have a First Amendment right of access to criminal trials (Richmond Newspapers v Virginia, 448 US 555). In order to ban the press and public from a criminal trial the defendant must demonstrate that " 'there is a substantial probability that the defendant’s right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant’s fair trial rights’ ” (Matter of Associated Press v Bell, 70 NY2d 32, 39). New York recognizes a common-law right of the press and public to attend civil and administrative proceedings that have historically been open to the public and there must be "compelling reasons” before that right will be abrogated (Matter of Herald Co. v Weisenberg, 59 NY2d 378, 384). Here, petitioner asserts that there has been extensive media coverage of this case and that his right to a fair trial will be prejudiced if details contained in this record are available to the public. Petitioner sought the same relief in a separate proceeding before Mr. Justice Bradley to disqualify Mr. Kavanagh as the prosecutor. Upon an almost identical record, Mr. Justice Bradley denied the closure motion. The court agrees with that ruling. Petitioner has not made a compelling showing of a substantial probability that his right to a fair trial will be prejudiced by publicity arising out of this article 78 proceeding. To the contrary, almost all of the information that petitioner seeks to suppress has already been disclosed in the numerous newspaper articles, copies of which were submitted in support of this motion.
The next issue to be decided is whether the remedy of prohibition is available under the facts alleged in the petition.
It is well settled that prohibition is an extraordinary remedy which may be invoked only when the body or officer — a prosecutor or court — acts or threatened to act without jurisdic *90 tion in a matter over which it has no power over the subject matter or exceeds its authorized powers in a proceeding over which it has jurisdiction (Matter of Holtzman v Goldman, 71 NY2d 564; Matter of Rush v Mordue, 68 NY2d 348). It may be invoked to prevent a prosecution or action without or in excess of the prosecutor’s or the court’s jurisdiction, which, if it proceeded, would implicate the legality of the entire proceeding, and only if there is a clear legal right to relief (CPLR 7803 [2]; Matter of Rush v Mordue, supra; Matter of Vega v Bell, 47 NY2d 543).
Prohibition does not issue as a right, but only in the exercise of judicial discretion; in exercising that discretion, the court must weigh the following factors: (1) the gravity of harm caused by the act to be performed by the public official which the petition seeks to prohibit; (2) whether there are alternate remedies available to redress the problem, such as appellate review or ordinary proceedings or motions, e.g., a motion to dismiss the indictment; (3) whether prohibition would afford a more complete and efficacious remedy through other methods of redress are technically available (Matter of Dondi v Jones, 40 NY2d 8; La Rocca v Lane, 37 NY2d 575; Matter of Carney v Leary, 106 AD2d 176).
The question presented here is whether a prosecutor’s agreement not to prosecute petitioner for first or second degree murder would be a jurisdictional impediment to his power to prosecute petitioner contrary to that agreement. Would prosecutor’s disregard of the agreement affect the legality of the entire proceeding and exceed the prosecutor’s very authority or power to engage in certain actions? The answer to that question would seem to be no. It is arguable that the agreement would render illegal any prosecution for the crimes of murder, but it could not be said that the prosecutor’s conduct would be in excess of his constitutional and statutory authority to prosecute criminal activity which occurred in Ulster County (see, County Law § 700). The most that can be said is that the prosecutor would be committing legal error in not giving effect to a contract made with the petitioner. Thus, the issue presented is not the very constitutional or statutory authority of the respondent, but simply the enforceability of the agreement which might ultimately preclude prosection of petitioner but not on jurisdictional grounds but rather on a substantive law question as to whether the agreement is binding. For that reason, prohibition is not available to restrain the respondent’s conduct.
*91 Even if prohibition were available, this court, in the exercise of discretion, would decline to invoke that remedy, since a motion addressed to the indictment provides petitioner with an adequate remedy to review the enforcement of the agreement not to prosecute him for certain crimes (Matter of Carney v Leary, 106 AD2d 176, supra).
Were the merits of the petition to be reached, Matter of Schrotenboer v Soloff (74 NY2d 597) seems to be dispositive. In that case, Family Court had awarded custody of three children to their mother. The father abducted the children, and a warrant was issued for his arrest for the felony of custodial interference. He entered into negotiations with an Assistant District Attorney whereby he would return the children and be given immunity from prosecution.
An agreement to that effect was executed, and the children were returned. The District Attorney refused to honor the agreement, and the father commenced an article 78 proceeding to prohibit his prosecution in violation of the agreement. While the District Attorney argued that article 78 was not the proper remedy to test whether a promise not to prosecute was enforceable, the Court of Appeals reached the merits, stating:
"While petitioner complains of a lack of good-faith bargaining, these parties were not engaged in any true bargaining, a process that contemplates that each side will contribute something in exchange for a desired compromise.
"Petitioner instituted this 'negotiation,’ and escalated his demands, while secreting three children in violation of a court order, their welfare unknown. In exchange for the prosecutor’s concessions, petitioner contributed nothing, and agreed to do no more than the law already required of him — return the children to their lawful custodian, safe and in good health. Mandating enforcement of an agreement exacted in these circumstances is a perversion, not a requirement, of public policy (see, United States v Gorham, 523 F2d 1088, 1097 [DC Cir])” (supra, at 600 [emphasis supplied]).
Counsel for petitioner argues that the opinion in Schrotenboer (supra) is distinguishable because in that case the father surrendered nothing, while his client surrendered the valuable right not to incriminate himself by conceding his knowledge of where the girl was located. This court fails to see a distinction. Schrotenboer also waived his Fifth Amendment right to remain silent as to the location of his children.
Be that as it may, the true reason that the agreement was not enforced was the determination by the Court of Appeals *92 that the agreement was "a perversion * * * of public policy” (74 NY2d, supra, at 600). At the time the subject agreement was entered into, District Attorney Kavanaugh did not know if Rickel Knox was alive or dead. His primary concern was to secure her safe return. A contract for immunity from specified charges entered into by the Ulster County District Attorney’s office with the alleged abductor when the abductor’s bargaining chip is the safe return of the victim will not be enforced (see, United States v Gorham, 523 F2d 1088, 1097 [DC Cir], supra).
The motion to change venue to Ulster County will be denied. The motion to close this proceeding to the press and public will be denied. The petition will be dismissed.

 The petition also sought to prohibit respondent from indicting petitioner for first or second degree murder. Since an indictment has been returned during the pendency of this proceeding, that portion of the proceeding has been rendered academic.